NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0273n.06

No. 14-1973

FILED
Apr 14, 2015
DEBORAH S. HUNT, Clerk

## UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| ABDLMOUHAYMEN DRAK AL-SIBAI, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:     GILMAN, ROGERS, and SUTTON, Circuit Judges.

ROGERS, Circuit Judge. In this civil denaturalization case, Abdlmouhaymen Al-Sibai, an immigrant from Syria, appeals the district court's order of denaturalization. After a bench trial, at which Al-Sibai did not appear or testify, the district court concluded that Al-Sibai had illegally procured his citizenship through a sham marriage. Accordingly, the district court ordered his certificate of citizenship revoked under 8 U.S.C. § 1451(a) and Al-Sibai appeals. The former "wife," along with three longtime friends of hers, testified that Al-Sibai paid her $5,000 to marry him, and that she never acted in any way as a wife to him, except to learn enough by cramming to deceive an Immigration and Naturalization Service (INS) adjudicator. This was sufficiently clear, unequivocal, and convincing evidence to support Al-Sibai's loss of citizenship, and Al-Sibai's various arguments to the contrary lack merit.

Al-Sibai was born in Homs, Syria on March 23, 1959. In 1979, he came to the United States on a student visa. Sometime in 1982, he met Cheryl Kankula, a United States citizen and 24-year-old single mother. In December 1982, a month before his student visa was due to expire, Al-Sibai married Kankula. In January 1983, Kankula filed Form I-130, petition to classify status of alien relative for issuance of an immigrant visa, and Al-Sibai filed Form I-485, application to register permanent residence. After an interview with an INS examiner, the INS granted Kankula's I-130 petition and Al-Sibai's I-485 application, giving Al-Sibai an immigrant visa and lawful permanent resident status. Al-Sibai and Kankula were divorced on September 11, 1984. Less than two years later, Al-Sibai married Rida Atassi, a woman from Homs, Syria, and the couple have since remained married. Al-Sibai was granted United States citizenship in 1989.

The United States filed a civil denaturalization complaint against Al-Sibai in 2013. The three-count complaint alleged that: (1) Al-Sibai had illegally procured his United States citizenship because he was never lawfully admitted for permanent residence; (2) he had illegally procured his citizenship because he lacked the good moral character necessary for citizenship; and (3) he had procured his citizenship by misrepresentation of a material fact and by concealment of facts. All three counts were based on the Government's allegation that Al-Sibai's marriage to Kankula was a sham. Because demonstrating that the marriage was a sham would, in the circumstances of this case, result in loss of citizenship, that fact had to be supported by "clear, unequivocal, and convincing" evidence, and not leave "the issue in doubt." *Fedorenko v. United States*, 449 U.S. 490, 505 (1981). A bench trial was held, the district court applied an adverse inference against Al-Sibai based on his failure to appear, and ruled in favor of the United States on all three counts.

A careful review of the record shows that the district court properly found by clear, unequivocal, and convincing evidence that Al-Sibai's marriage was a sham. The evidence of the sham produced by the Government at trial was overwhelming. Three witnesses, including Kankula, testified that Al-Sibai paid Kankula $5,000 to marry him. Kankula testified that she and Al-Sibai agreed that their marriage was not going to be "real," that they would not live together, and that they would get divorced. Kankula testified that she and Al-Sibai were married at a barber shop, that none of her family or friends was present for the ceremony, that there was no wedding reception or honeymoon, and that she went home alone after the ceremony. Kankula testified that she and Al-Sibai never lived together, that they did not have keys to each other's homes, and that they visited each other only to prepare for the INS interview. Kankula further testified that she never wore a wedding band other than during the ceremony and at the INS interview, that she never changed her name, and that after the ceremony she continued to date other men. This testimony was largely corroborated by three of Kankula's friends, Margaret Boling, Lenore Harper, and Toni Heacox. Al-Sibai did not put on any witnesses. In attempting to undermine the court's finding, Al-Sibai points to inconsistencies in the testimony of Kankula and her three friends. But the district court reasonably concluded that the women witnesses testified to "the same material facts" and that the "minor discrepancies" in their testimony were attributable to the 30-year passage of time since the occurrence of the events giving rise to the trial.

Because there was more than sufficient evidence to establish that Al-Sibai's marriage to Kankula was a sham designed to evade immigration laws, the district court did not err in ruling against Al-Sibai on the first count of the denaturalization complaint. Al-Sibai was not eligible to receive an immigrant visa through his sham marriage, *see* 8 U.S.C. § 1154(c), and thus he

entered the United States under an invalid visa. And "entry into the United States under an invalid visa is a failure to comply with congressionally imposed statutory prerequisites to citizenship which renders any certificate of citizenship revocable as illegally procured under § 1451(a)." *United States v. Dailide*, 227 F.3d 385, 390 (6th Cir. 2000). Because the district court properly ruled for the United States on the first count of the complaint, it is unnecessary for us to address the remaining two counts.

Finally, because there was overwhelming evidence that Al-Sibai's marriage was a sham, any error in the district court's application of an adverse inference against Al-Sibai was harmless. *See Nw. Nat'l Cas. Co. v. Global Moving & Storage, Inc.*, 533 F.2d 320, 324 (6th Cir. 1976).

The judgment of the district court is affirmed.